## Case No. 3,462.

### CULBERTSON v. The SOUTHERN BELLE.

[1 Newb. 461.] [1]

District Court, E. D. Louisiana. Feb. Term, 1854. [2]

TOWN ORDINANCES — COLLISION — STEAMER AND FLAT-BOAT AT PIER.

1. The corporations of cities and towns on the Mississippi river, when authorized by the legislatures of the different states, within which those cities and towns are situated, have the right to pass rules and regulations relative to their landings; and it is the duty of this court to respect them.

2. Testimony introduced to show that the ordinances of the town of Grand Gulf, fixing the places of landing for steamboats and flat-boats, are rarely enforced by the authorities of the town, can have no influence with this court; for if the fact be so, it may serve to show a

gross dereliction of duty on the part of those who have been charged with the execution of those ordinances, but can afford no ground for this court to decree that they are to be totally disregarded.

3. Whether the libelant, in taking a position for his flat-boat at the landing, did so voluntarily or in accordance with the orders of the proper officer having a supervisory control over his actions, is not material. If he brought himself within the pale and under the protection of the local regulations, he was in his proper position; and the attempt of a steamboat to land there, must be considered as an intrusion.

[See note at end of case.]

4. Precaution and vigilance on the part of the officers of vessels propelled by steam, should be increased in proportion to the difficulties of navigation in particular localities, and in proportion to the dangers of collisions to which they are liable to expose the property of others.

[See note at end of case.]

[In admiralty. Libel by William B. Culbertson, owner of the flat-boat Rainbow, against the steamboat Southern Belle (Henry B. Shaw, William M. Shaw, Elam Bowman, Sidney A. Lacoste, and John D. Sebastian, claimants) to recover damages sustained by collision.]

L. Hunter, for libelant.

Benjamin, Bradford & Finney, for respondent.

McCALEB, District Judge. This suit has been instituted to recover damages which, the libel alleges, were sustained by the libelant as owner of a flat-boat which was sunk by the steamboat Southern Belle. The flat-boat was moored at the usual and prescribed place of landing for flat-boats, and was stove by the steamer, while the latter was attempting to land at the same place. The collision occurred at Grand Gulf, Mississippi. The rules and regulations of the selectmen of Grand Gulf, have been brought to the attention of the court, and conclusively establish the fact that the flat-boat was in its proper place. The corporations of the cities and towns on the Mississippi, when authorized by the legislatures, undoubtedly have the right to pass rules and regulations with respect to their landings; and it is the duty of this court to respect and uphold them. Testimony has been introduced on the part of the respondent, to show that the ordinances of the town of Grand Gulf, relating to the landing, are rarely if ever enforced. Such evidence can have no weight with the court, for if the fact be so, it may serve to show a gross dereliction of duty, on the part of those who have been charged with the execution of the ordinances, but can afford no ground for this court to decree that they are to be totally disregarded. Until they are repealed by the authority that enacted them, they will be presumed to be in full force, and adequate to the purpose for which they were passed. And it is a matter of no importance, whether the libelant in taking his position at the landing, did so voluntarily or in ac-

---

[1] [Reported by John S. Newberry, Esq.]

[2] [Reversed by circuit court (case unreported). The decree of circuit court was reversed by supreme court in Culbertson v. The Southern Belle, 18 How. (59 U. S.) 584.]

cordance with the orders of the proper officer having the supervisory control over his actions. If he was within the pale and under the protection of the local regulations, the court will hold him justified. If he was right in the position he occupied, the attempt of the steamer to land there must be regarded as an intrusion.

It has been contended on behalf of the respondents, that the collision was the result of an unavoidable accident caused by the violence of the wind, which was blowing at the time hard on shore. I have examined the evidence most confidently relied on, in favor of the respondents, that of the pilot, who was at the wheel of the steamer at the time of the collision, and who as usual with pilots, testifies strongly in justification of his own conduct; and I am by no means satisfied, that the collision was unavoidable. This is a common plea, set up by officers of steamboats, and is seldom even plausibly sustained by evidence. In the present instance the plea is unavailing. It is not pretended that the violence of the wind was too great for the resistance of steam. If such were the fact, the boat would have been driven to the shore before the attempt to land was made. She could not have proceeded with safety on her voyage. The force of the wind undoubtedly increased the difficulties of landing; but this was only a reason for increased care and caution. This court has repeatedly held that the precaution and vigilance on the part of officers of vessels propelled by steam, should be increased in proportion to the difficulties of navigation in particular localities, and in proportion to the dangers to which they are liable to expose the property of others.

It has also been contended on behalf of the respondents, that there was no light on board of the flat-boat at the time of the collision, and that she could not, therefore, be seen from the steamer until it was too late to prevent the occurrence. On this point there is a conflict of evidence. The witnesses on behalf of the respondents, testify that they saw no light, while those who were on board the flat-boat at the time of the collision, testify most positively that a light was brought upon deck, about the time the steamboat commenced backing down from the wharf-boat. That there was a lantern exhibited on the flat-boat before the collision, I have no doubt. If it was not seen on the steamer, I can only account for the fact upon the supposition, that the greater glare of the torch light from the latter, was such as to dim if not entirely to obscure in the darkness of the night the lesser lights near the shore. But besides the existence of a light on the flat-boat, we have the evidence of the respondents' witnesses, that there was clear starlight, and some of the witnesses testify that the moon was shining at the time.

An attentive examination of the evidence and the arguments of counsel, has led my mind to the conclusion that by the observance of proper prudence and precaution on the part of the officers of the steamer, the collision could have been avoided; and that no blame can be fairly thrown upon those who had charge of the flat-boat. I therefore pronounce for the damage sustained by the libelant to be definitely ascertained by a reference to R. M. Lusher, Esq., commissioner, upon the coming in of whose report, a final decree will be entered.

NOTE [from original report]. This decree was sustained by the supreme court of the United States, on appeal from the judgment of the circuit court [decision not reported], by which it was reversed.

[NOTE. The opinion of the supreme court, delivered by Mr. Justice McLean, set forth, as the reasons for sustaining the decree of the district court, that, the regulation as to the landing places at Grand Gulf being generally known, it was immaterial whether it was established by ordinance or by general usage; that the Rainbow was not negligent in failing to carry a light; and that the fault lay with the Southern Belle, in not landing above the wharf boat, in failing to keep up sufficient steam to control her, and in failing, through the lack of vigilance of her officers, to see the wharf boat in time to take measures to avoid the casualty. Culbertson v. The Southern Belle, 18 How. (59 U. S.) 584.]